**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MALIBU MEDIA, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 12-2077 |
| JOHN DOES 1-15, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                          **JULY 30, 2012**

Presently before the Court is the Defendant, John Doe # 5's ("Defendant") Motion to

Sever Doe # 5 as a Defendant and Motion to Quash the Subpoena filed by Plaintiff, Malibu

Media ("Plaintiff"), and Plaintiff's Response in Opposition.  For the reasons set forth below, the

Motions are denied.

I.      **FACTS**

        **A.  The Parties**

        Plaintiff, a corporation operating out of Malibu, California, engages in the production and

sale of adult films.  (Compl. at p. 2.)  Plaintiff owns the copyright for the motion picture entitled

"Veronica Wet Orgasm" (the "Work").  (Id. at p. 3.)  The Work was registered on or about

November 23, 2011.  (Id.)  Plaintiff claims that the fifteen Doe Defendants, who are identified

solely by an internet protocol ("IP") address, willfully reproduced, redistributed, performed and

displayed the Work in violation of various copyright laws.[1]  (<u>Id.</u> at pp. 8-11.)  One of these

Defendants, Doe # 5 ("Defendant"), is a resident of the Borough of Macungie, Pennsylvania.

(Def.'s Mot. 2.)  RCN is a technology company that provides internet service to the Defendant.

(<u>Id.</u>)

### B.  BitTorrent

BitTorrent is one of the most common peer-to-peer file sharing programs.  (Compl. at p.

3.)  Plaintiffs assert that it is estimated that users operating BitTorrent account for over a quarter

of all internet traffic.  (<u>Id.</u>)  BitTorrent utilizes the internet to transfer files between

interconnected computers.  (<u>Id.</u>)  BitTorrent enables users to download or upload large files

without a heavy load on one source computer or network.  (<u>Id.</u>)  Initiating the process requires a

seeder to create a torrent and upload it onto one or more torrent sites.  (<u>Id.</u> at p. 6.)  This enables

other peers to download and upload the file using BitTorrent software that is installed on their

computers.  (<u>Id.</u>)  Once a peer receives a piece of the computer file, it starts transmitting that

piece to other peers.  (<u>Id.</u>)  The transmissions create a relationship between the seeders and peers

called a "swarm."  (<u>Id.</u>)  Once a peer has downloaded the full file, it is reassembled and the peer

is able to see, hear or otherwise utilize the file.  (<u>Id.</u> at p. 7.)

### C.  The Acts of John Does 1-15

Plaintiff alleges that Defendants John Does 1-15 committed acts of copyright

infringement when they used BitTorrent to participate in the same "swarm" to upload and

download the Work.  (<u>Id.</u> at p. 6.)  Plaintiff reached this conclusion after retaining IPP, Ltd.

("IPP"), a company that specializes in the use of forensic software to scan peer-to-peer networks

---

[1]Specifically, Plaintiff alleges violations of 17 U.S.C. § § 106(1), 106(3), 106(4), 106(5) and 501.

for the presence of infringing transactions.  (Id. at p. 7.)  Using this technology, IPP isolated the transactions alleged in the Complaint against the fifteen Defendants.  (Id.)  At this time, these Defendants are only known to Plaintiff by the unique internet protocol address that corresponds to the infringing transactions.  (Id. at pp. 7-8.)  Plaintiff does not know the actual identities of the John Doe 1-15 Defendants.  (Id.)

### D.  Procedural History

Plaintiff filed suit against the Defendants on April 19, 2012.  (Id. at p. 1.)  The Complaint alleges that the Defendants willfully engaged in various acts of copyright infringement without the authorization of the Plaintiff.  (Id. at pp. 8-11.)  Consequently, Plaintiff contends that the Defendants are each jointly and severally liable for the actual damages that were proximately caused by each of the Defendants including lost sales, price erosion and a diminution of the value of its copyright.  (Id. at pp. 9, 11.)

On April 25, 2012, we granted Plaintiff's Motion for leave to serve third party subpoenas prior to the Rule 26(f) conference.  (Doc. No. 5.)  Thereafter, Plaintiff served a subpoena on RCN to compel the disclosure of documents to identify the name, address, telephone number, and email address of each Defendant in order to name the Defendant in Plaintiff's copyright infringement action.  (Def.'s Mot. at 2.)  In response, Defendant filed Motions to sever them from the other Defendants and to quash the subpoena.  These Motions are the focus of this Memorandum Opinion and will be addressed in turn.

## II.   MOTION TO SEVER

### A.   STANDARD OF REVIEW

The joinder of defendants into a single action is governed by a two-part test.  See Fed. R.

Civ. P. 20(a)(2).  First, any right to relief must be asserted against all the defendants jointly,

severally, or in the alternative, must arise from the same transaction, occurrence, or series of

transactions or occurrences.  Id..  Second, the defendants must share  a common question of law

or fact in the action.  Fed. R. Civ. P. 20(a)(2)(B).  These factors are mandatory and if either is

absent, joinder is improper.  Fed. R. Civ. P. 20(a)(2).  Where misjoinder occurs, the court is

empowered, by motion or *sua sponte*, to add or drop a party or sever any claim against a party.

Fed. R. Civ. P. 21.

 It is well settled that joinder "is strongly encouraged" and courts are advised "toward

entertaining the broadest possible scope of action consistent with fairness to the parties."  United

Mine Workers v. Gibbs, 282 U.S. 715, 724 (1966); see also Hagan v. Rogers, 570 F.3d 146, 152

(3d Cir. 2009).  This sensible interpretation of Rule 20 by the United States Supreme Court in

Gibbs serves to promote judicial economy, prevent a multiplicity of lawsuits and reduce

inconvenience, delay and added expense.  Gibbs, 282 U.S. at 724; Al Daraji v. Monica, No. 07-

1749, 2007 WL 2994608, at *10 (E.D. Pa. Oct. 21, 2007).

 **B.** **DISCUSSION**

 We find that at this early stage in the litigation the requirements of Rule 20 are satisfied

and joinder is proper.  First, the Plaintiff alleges joint and several liability against each of the

fifteen John Doe Defendants.  Second, the unique characteristics of BitTorrent entangle the

Defendants within the same transaction, occurrence or series of transactions or occurrences.

Finally, the Defendants share common questions of law and fact.

 **(1) Right to Relief**

Defendant moves to sever from the other Defendants arguing that the facts fail to

4

demonstrate that they are jointly, severally or alternatively liable, along with the fourteen other John Doe Defendants, for actions arising out of the same transaction, occurrence or series of transactions or occurrences.  The first part of the test for proper joinder requires that any right to relief must be asserted against all the defendants jointly, severally, or in the alternative, must arise from the same transaction, occurrence, or series of transactions or occurrences.  Fed. R. Civ. P. 20(a)(2)(A).  Though the Rule only requires Plaintiff to demonstrate one of the two alternatives, Plaintiff in this case has satisfied both.

> **(a) Plaintiff's have asserted the right to relief jointly and severally against all Defendants**

In the Complaint Plaintiff satisfies Rule 20(a)(2)(A) by asserting that each Defendant is jointly and severally liable for the infringing activities of each of the other Defendants.  (Compl. at 3.)  However, we proceed to analyze the second alternative per *arguendo*.

> **(b) The alleged actions of the Defendants arise from the same transaction, occurrence or series of transactions or occurrences**

Courts are split as to whether multiple unnamed defendants should be joined in actions involving claims of copyright infringement using BitTorrent.  See Raw Films, Ltd. v. John Does 1-15, No. 11-7248, 2012 WL 1019067, at *2 (E.D. Pa. Mar. 26, 2012) (joinder appropriate); Patrick Collins, Inc. v. John Does 1-21, No. 11-15232, 2012 WL 1190840, at *9-10 (E.D. Mich. Apr. 5, 2012) (same); Hard Drive Prods., Inc. v. Does 1-55, No. 11-2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011) (same).  But see Cinetel Films, Inc. v. Does 1-1,052, No. 11-02438, 2012 WL 1142272, at *2 (D. Md. Apr. 4, 2012) (joinder inappropriate); Hard Drive Prods. Inc. v. Does 1-30, No. 11-345, 2011 WL 4915551, at *4 (E.D. Va. Oct. 17, 2011) (same); Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011) (same).

The Court of Appeals for the Third Circuit ("Third Circuit") has not specifically interpreted Rule 20(a), but has illuminated the phrase "same transaction or occurrence" with regard to Rule 13 compulsory counterclaims.   In Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389-90 (3d Cir. 2002), the court found that to constitute the "same transaction or occurrence" there must be a logical relationship.  See also Miller v. Hygrade Food Products Corp., 2002 F.R.D. 142, 144 (E.D. Pa. 2001) (quoting Moore v. New York Cotton Exch., 270 US 593, 610 (1926)) (defining transaction as a word with flexible meaning which may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship).  Situations, where the same factual or legal issues would result in substantial duplication of effort and time by the parties and the courts, form a logical relationship.  See  Xerox Corp. v. S.C.M. Corp., 576 F.2d 1057, 1059 (3d Cir. 1978); Great Lakes Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961).  The Third Circuit deemed this definition as "generous" and serving to promote judicial economy. Transamerica Occidental Life Ins. Co., 292 F.3d at 390.  A liberal interpretation comports with the underlying objective of the Federal Rules of Civil Procedure that each rule should be "construed and administered to secure the just, speedy, and inexpensive determination of every action or proceeding."  Fed. R. Civ. P. 1.

In Raw Films, Ltd., a case that factually mirrors the one before this Court, plaintiff alleged that fifteen John Doe defendants had committed copyright infringement by reproducing and distributing a motion picture using BitTorrent.  Raw Films, Ltd. v. John Does 1-15, 2012 WL 1019067, at *2.  Plaintiff, using the services of a forensic investigator, determined that each defendant became part of the "swarm" by copying a piece of the copyrighted file and transmitting

it using the server at some point during a seventy-four day period.  Id. at 3.  Noting the early

point in the litigation, the Court permitted joinder, but explicitly provided that any defendant,

once named and served, could challenge the appropriateness of the joinder.  Id. at 5.  Specifically,

the Court stated:

> Even if no Doe defendant directly transmitted a piece of the Work
> to another Doe defendant, the Court is satisfied that at this stage of
> the litigation the claims against each Doe defendant appear to arise
> out of the same series of transactions or occurrences, namely, the
> transmission of pieces of the same copy of the Work to the same
> investigative server.  The claims against each defendant are
> logically related because they will feature largely duplicative proof
> regarding the nature of BitTorrent, the plaintiff's ownership
> interest in the copyright for the Work, and the forensic
> investigation conducted by the plaintiff.  These common questions
> of fact are likely to arise along with the legal standards for direct
> and contributory copyright infringement liability.  The joining of
> the fifteen defendants that have these elements in common will, at
> this point, prevent a multiplicity of lawsuits.  Thus, the
> requirements of Rule 20(a)(2) are met, and its purposes furthered.

Id. at 4.

With due regard to the technology at issue and our current stage in the proceeding, we

find this reasoning and approach to be sensible and adopt it in this case.  At this early stage of the

litigation, no defendant will suffer prejudice.  Rather, he or she may benefit from being able to

obtain communal discovery and observe the defenses raised by the other defendants.  Id. at 4; see

also Call of the Wild Movie, L.L.C. v. John Does 1-1062, 770 F. Supp. 2d 332, 344 (D.D.C.

2011)(citing London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 161 (D. Mass. 2008)).

Finally, any future detrimental impacts imparted by our decision to maintain the joinder of

defendants is blunted by our power under Rule 21 to drop any party at any time that we find to be

a misjoinder.  See Fed. R. Civ. P. 21.  For these reasons, we find that the alleged actions of the

Defendants arise from the same transaction, occurrence or series of transactions or occurrences.

**(2) Commonality**

Additionally, Rule 20 requires that the defendants share a common question of law or fact in the action.  Fed. R. Civ. P. 20(a)(2)(B).  This is a lax standard whose "threshold" has been described as "very low."  Al Daraji v. Monica, No. 07-1749, 2007 WL 2994608, at *10 (E.D. Pa. Oct. 21, 2007).  Here, common questions of law and fact are present.  Defendants are all accused of violating the same copyright laws.  Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact.  Consequently, we find that this low standard is satisfied.

In sum, we find that at this early stage in the litigation the requirements of Rule 20 are satisfied and joinder is proper.  Thus, the Defendant's Motion to Sever is denied.

## III.   MOTION TO QUASH

### A.   STANDARD OF REVIEW

The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied.  See City of St. Petersburg v. Total Containment, Inc., No. 07-191, 2008 WL 1995298, at *2 (E.D. Pa. 2008).  Courts have described this as a heavy burden.  See Dexter v. Cosan Chem. Corp., No. 91-5436, 2000 U.S. Dist. LEXIS 22134, at *7-8 (D.N.J. Oct. 24, 2000).

### B.   DISCUSSION

On April 25, 2012, we found that Plaintiff established good cause to serve third party subpoenas on the internet service providers that administer the IP addresses where the alleged infringements originated from.  See Doc. No. 5.  Specifically, the Order granting Plaintiff's

Motion permitted Plaintiff to serve a Rule 45 subpoena to ascertain the name, address, telephone number, e-mail address and Media Access Control address of each of the Defendants.[2]  Id.  In response, Defendant filed a Motion to Quash the subpoena alleging that: (1) it would disclose privileged information, (2) presents an undue burden on the Defendant, (3) pertains to information that is not relevant to Plaintiff's allegations and (4) that this Court lacks personal jurisdiction over the Defendant.  We proceed to address these arguments.

Our analysis starts from the established premise that the use of John Doe defendants is permissible in certain situations until reasonable discovery reveals the identity of the true defendants.  See Blakeslee v. Clinton County, 336 Fed. Appx. 248, 250 (3d Cir. 2009) (citing Klingler v. Yamaha Motor Corp. U.S.A., 738 F. Supp. 898, 910 (E.D. Pa. 1990)).  However, where reasonable discovery does not uncover the proper identities, it is well-settled precedent that courts, empowered by Rule 21, must dismiss the John Doe defendants.  See Blakeslee, 336 Fed. Appx. at 250-51 (affirming dismissal where John Doe defendants could not be properly named); Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990); Adams v. City of Camden, 461 F. Supp. 2d, 263, 271 (D.N.J. 2006).

**(1)**   *Disclosure of Privileged Information*

Rule 45 requires courts to quash or modify a subpoena that would disclose privileged information where there are no applicable exceptions or waivers.  See Fed. R. Civ. P. 45(c)(3)(A)(iii).  Defendant cites this rule in arguing that the subpoena must be quashed because it would disclose privileged information.  The burden rests squarely on the Defendant, as the moving party, to demonstrate that a privilege exists and that the subpoena would disclose such

---

[2]The Defendants are identified solely by IP address.

information.  See  City of St. Petersburg, No. 07-191, 2008 WL 1995298, at *2 (E.D. Pa. May 5,

2008).  However, in this case, Defendant neglects to assert and we fail to ascertain any applicable

claim of privilege.

   In addition, Defendant asserts a vague argument that the subpoena must be quashed

because it will disclose "personal identification information considered to be confidential and

over which [Defendant] has personal and proprietary interests."  (Def.'s Mot. to Quash at 5.)  We

interpret this argument, as have other courts including within our district, to implicate the

Defendant's First Amendment right to remain anonymous.  See Raw Films, Ltd., 2012 WL

1019067, at *6 (E.D. Pa. Mar. 26, 2012); see also Sony Music Entertainment, Inc. et al., v. Does

1-40, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004).

   The alleged conduct of the Defendant, using BitTorrent to engage in acts of copyright

infringement, raises contemporary issues regarding the interplay between the First Amendment

and a plaintiff's ability to protect copyrighted works.  "Whatever the challenges of applying the

Constitution to ever advancing technology, 'the basic principles of freedom of speech . . . like the

First Amendment's command, do not vary' when a new and different medium for

communication appears."  Brown v. Entertainment Merchants Ass'n, 131 S.Ct. 2729, 2733

(2011) (quoting Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 503 (1952)).  Legal actions arising

from BitTorrent bear factual characteristics unique to these cases.  First, BitTorrent users, such as

Defendant in this case, operate anonymously in what is termed a "swarm."  The Supreme Court

has found First Amendment implications where the identity of anonymous persons is sought by

judicial order.  NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462 (1958) (discovery order

requiring the disclosure of NAACP's membership list interferes with First Amendment's

freedom of assembly).  The Court asserted that, "it is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on freedom of association."  Id. at 462.  Thus, the closest scrutiny is placed on actions that could have the effect of curtailing this freedom.  Id. at 460-61.  However, the bedrock of the NAACP decision is protecting the identities of persons engaged in lawful advocacy.  Here, the Doe Defendants were not engaged in such behavior, but rather are alleged to have violated copyright laws through their aggregate behavior of transmitting pornographic movies using BitTorrent.  Thus, the concerns elucidated in the NAACP decision are not present here.

Second, the idiosyncrasies inherent in using BitTorrent to connect and transmit information between peers raises novel issues of law with regard to the First Amendment.  The First Amendment has been found to protect the right to engage in anonymous internet communication.  See Raw Films, Ltd., 2012 WL 1019067, at *6 (citing Reno v. ACLU, 521 U.S. 844, 870 (1997)).  Courts have held that the "use of P2P (peer to peer) file copying networks to download, distribute, or make sound recordings available qualifies as speech" and is entitled to some level of First Amendment protection.  Sony Music Entertainment, Inc. et al.,  326 F. Supp. 2d at 564; see also Raw Films, Ltd., 2012 WL 1019067, at *6. However, the Supreme Court has clearly declared that the First Amendment does not protect copyright infringement.  See Harper & Row Publishers, Inc. v. Nation Enters, 471 U.S. 539, 555-556, 569 (1985); Universal City Studios, Inc. v. Reimerdes, 82 F. Supp. 2d 211, 220 (S.D.N.Y. 2000) (the "Supreme Court . . . has made it unmistakably clear that the First Amendment does not shield copyright infringement."); In re Captial Cities/ABC, Inc., 918 F.2d 140, 143-44 (11th Cir. 1990) ("[T]he First Amendment is not a license to trammel on legally recognized rights in intellectual

property.") (quoting <u>Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.</u>, 600 F.2d 1184, 1188 (5th Cir. 1979)).

      With due regard for the unique facts of this and other BitTorrent cases, the legal inquiry is whether the First Amendment shields the identities of internet users allegedly engaging in the unauthorized transmission of copyrighted materials from discovery requests by plaintiffs attempting to protect their copyrighted works.

      The Third Circuit has not set forth a calculus for weighing the necessity for discovery in contrast to the right to engage in anonymous speech.  The United States Court of Appeals for the Second Circuit ("Second Circuit") is the only federal appellate court to articulate and utilize a test.  <u>See</u> <u>Arista Records, LLC, v. Doe 3</u>, 604 F.3d 110, 114 (2d Cir. 2010) (citing <u>Sony Music Entertainment Inc. v. Does 1-40</u>, 326 F. Supp. 2d 556, 564-67 (S.D.N.Y. 2004)).  The Second Circuit's test consists of five prongs: (a) prima facie claim of copyright infringement; (b) the specificity of the discovery request; (c) the absence of alternative means to obtain the subpoenaed information; (d) the central need for the subpoenaed information; and (e) the Defendant's expectation of privacy.  <u>Sony Music Entertainment Inc.</u>, 326 F. Supp. 2d at 564.  In <u>Raw Films, Ltd.</u>, our fellow district court applied this test in a case very similar to the one before this Court. <u>Raw Films, Ltd.</u>, 2012 WL 1019067, at *6-7.  We concur in the conclusion that this test "strikes the appropriate balance between the limited protection afforded to speech that constitutes copyright infringement and the need for the plaintiff to serve a defendant with process in order to advance non-frivolous claims of infringement."  <u>Id.</u> at *7.  Therefore, we proceed to apply the test to the facts of this case.

### (a) Prima Facie Claim of Infringement

A prima facie claim of copyright infringement requires: (1) ownership of a valid copyright, and (2) the copying of constituent elements of the work that are original.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  In this case, Plaintiff satisfies both elements.  First, Plaintiff has produced a document evidencing that a valid copyright exists for the Work.  (See Compl. at p. 18.)  Additionally, Plaintiff has asserted that the Defendant, through the use of BitTorrent, illegally copied elements of the Work.  Thus, we find Plaintiff has adequately set forth a prima facie claim of copyright infringement.

### (b) The Specificity of the Information Sought from the Internet Service Provider

As to the specificity of the information sought, Plaintiff seeks only the name, address, telephone number, e-mail address and Media Access Control address of Defendant.  We find this sufficiently specific to identify the persons so that they can be properly served.  Raw Films, Ltd., 2012 WL 1019067, at *7 (subpoena seeking this exact same information satisfies specificity requirement).

### (c) Alternative Means of Obtaining the Subpoenaed Information

The burden rests on the Defendant to show that there are alternative means to obtain the subpoenaed information.  Defendant has not set forth, and we fail to recognize, any available alternative.

### (d) The Central Need for the Subpoenaed Information

As previously stated, a plaintiff must properly identify John Doe defendants in order to avoid dismissal of their claims.  See Blakeslee, 336 Fed. Appx. at 250-51 (affirming dismissal

where John Doe defendants could not be properly named); Scheetz, 130 F.R.D. at 37; Adams, 461 F. Supp. 2d at 271.  These cases denote that the identity of the defendant is critical to the ability of the plaintiff to serve process on defendant and proceed with the litigation.  Thus, this factor militates against quashing the subpoena.

### (e) Expectation of Privacy of the Objecting Party

An internet user engaging in peer to peer file sharing has a minimum expectation of privacy.  See Raw Films, Ltd., 2012 WL 1019067, at *8; Sony Music Entertainment Inc., 326 F. Supp. 2d at 566-67.  One court aptly summarized this sentiment by stating that, "it is hard to understand just what privacy expectation he or she has after essentially opening up the computer to the world."  In re Verizon Internet Servs., Inc., 257 F. Supp. 2d 244, 267 (D.D.C. 2003) *rev'd on other grounds*, Recording Indus. Ass'n of America Inc. v. Verizon Internet Services, Inc., 351 F.3d 1229 (D.C. Cir. 2003).  This expectation is even lower where the alleged transmissions include copyright protected works.  Sony Music Entertainment Inc., 326 F. Supp. 2d at 566-67.

Additionally, since internet subscribers have already voluntarily conveyed their subscriber information - name, address and phone number - to their internet service provider, courts have been reluctant to find any reasonable expectation of privacy.  See First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 247 (N.D. Ill. 2011); Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4, 577, 736 F. Supp. 2d 212, 216 (D.D.C. 2010).  For these reasons, we find Defendant's expectation of privacy to be minimal and the overall need for the disclosure of the information sought by Plaintiff to be significant.

In sum, we fail to find any factor supporting the Defendant's contention that the subpoena must be quashed.  (emphasis added).  We find that the Plaintiff's need for the subscriber

information in order to properly serve the John Doe Defendants outweighs any of the limited

First Amendment protections afforded to the Defendants.

    **(2)**    ***Undue Burden***

    Defendant contends that Rule 45 mandates that the subpoena must be quashed or

modified because it subjects he or she to an undue burden.  See Fed. R. Civ. P. 45(c)(3)(A)(iv).

This argument is incorrect for two distinct reasons.  First, and fatal to this claim, Defendant is not

faced with an undue burden because the subpoena is directed at the internet service provider and

not the Defendant.  See Third Degree Films, Inc. v. Does 1-118, No. 11-03006, 2011 WL

6837774, at *3 (D. Md. Dec. 28, 2011).  It is the service provider that is compelled to disclose

the information, and thus, its prerogative to claim an undue burden.  See First Time Videos, 276

F.R.D. at 250.  In this case, there is no burden on Defendant to produce any information.

(emphasis added).

    Second, Defendant claims "the risk of reputational injury to an individual from public

exposure and association with the Malibu allegations - even if later disproven - is too great and

presents an undue burden."[3]  (Def.'s Mot. to Quash at 7.)  In order to establish an undue burden,

Defendant must show a "clearly defined and serious injury."  City of St. Petersburg, No. 07-191,

2008 WL 1995298, at *2 (E.D. Pa. May 5, 2004) (citing Transcor, Inc. v. Furney Charters, Inc.,

212 F.R.D. 588, 592-93 (D. Kans. 2003)).  Here, Defendant's broad claim of reputational injury

fails to demonstrate a "clearly defined and serious injury."  We acknowledge that "there is some

social stigma attached to consuming pornography"; however, "it is the rare civil lawsuit in which

---

[3]Defendant cites to an Order that is claimed to be marked Exhibit B (cited as VPR Internationale v. Does 1-1017, No. 2:11-CV-02068).  However, Defendant has failed to include this Order with the Motion submitted to this Court.

a defendant is not accused of behavior of which others may disapprove." Collins v. John Does 1-54, No. 11-1602, 2012 WL 911432, at *4 (D. Ariz. Mar. 19, 2012) (denying a protective order to shield defendant accused of downloading pornography using BitTorrent from annoyance, embarrassment, oppression, or undue burden).  At least one court has noted that "the potential embarrassment . . . of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously." Liberty Media Holdings, LLC v. Swarm Sharing Hash File, No. 11-10802, 2011 WL 5161453, at *7 (D. Mass. Oct. 31, 2011); see also Patrick Collins, Inc. v. John Does 1-18, No. 11-7252, at *5 (E.D. Pa. May 7, 2012) (denying motion to quash or for a protective order where Defendant allegedly transmitted pornographic materials using BitTorrent).[4]

**(3)  *Relevancy***

The scope of discovery in federal litigation is broad.  See Fed. R. Civ. P. 26.  Discovery may be obtained regarding any unprivileged matter if it is relevant to the claim or defense of any party.  Id.  Discovery is not confined to admissible evidence, rather it includes any information that is reasonably calculated to lead to admissible information.  Id.  Accordingly, the relevancy standard is satisfied and discovery requests are to be granted if there is any possibility that the that the information may be relevant to the general subject matter of the action.  See Barnes Foundation v. Twp. of Lower Merion, No. 96-372, 1997 WL 169442, at *5 (E.D. Pa. Apr. 7, 1997) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  Courts have construed the relevancy requirement liberally to facilitate the mutual knowledge of all relevant facts.  See Hickman v. Taylor, 329 U.S. 495, 507 (1947); see also Oppenheimer, 437 U.S. at 351.

---

[4]This citation is to an Order that has not been published at this current date.

This approach is sensible because determinations on relevance in discovery are made well in advance of trial.  See Cash Today of Tex. v. Greenberg, No. 02-MC-77, 2002 WL 31414138, at *1 (D. Del. Oct. 23, 2002); see also Fed. R. Civ. P. 26 (Advisory Committee note).

Defendant claims that the subpoena should not have been issued in the first place because the information sought is not relevant to Plaintiff's allegations.  (Def.'s Mot. to Quash at 7.)  The crux of Defendant's argument is that the IP address that Plaintiff seeks may not elicit the exact identity of the infringer.  (Id. at 7-8.)  However, Defendant's argument fails to take into account the judicial predilection toward liberalized discovery and the ample supporting precedent.  The information sought need not be admissible, rather it must only be reasonably calculated to lead to admissible information.  Here, even assuming arguendo that the subscribers' name and information is not the actual user sought, we are of the opinion that it is reasonable to believe that it will aid in finding the true identity of the infringer and, therefore, we find that it is relevant.  This is especially true, as in this case, where there is no other way to identify the proper defendants and proceed with claims against them.  See Raw Films, Ltd., 2012 WL 1019067, at *6 (subscriber information from allegedly infringing IP address is highly relevant to the plaintiff's claims); see also OMS Investments, Inc., v. Lebanon Seaboard Corp., No. 08-2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008) (finding that the identities of the authors of notes written by designers while working on an alleged copyright infringing dress was relevant).  In light of the facts of this case, we find the information sought by the Plaintiff to be highly relevant.

Additionally, Defendant contends that the discovery request should not be granted because "the quantum of relevance is outweighed by the quantum of burden to the defendant."

17

(Def.'s Mot. to Quash at 8) (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)).  Defendant's contention is misguided.  As previously stated, the information sought is highly relevant as it is imperative to the Plaintiff's ability to proceed in the litigation.  Conversely, as noted, the Defendant bears no burden since the subpoena is directed to the internet service provider and not to the Defendant. In sum, the high relevancy of the information sought and the lack of any burden on the Defendant swings the balancing test of Rule 26(b)(2)(C)(iii) authoritatively in favor of the Plaintiff.

### (4)  *Personal Jurisdiction*

Finally, Defendant contends that this Court lacks personal jurisdiction.  (Def.'s Mot. to Quash at 5.)  In situations where a plaintiff files suit against then unnamed defendants, courts have found personal jurisdiction objections to be premature until the defendants have been properly identified.  See Cinetel Films, Inc. and Family of the Year Productions, LLC v. Does 1-1,052, No. 11-02438, 2012 WL 1142272, at *11 (D. Md. Apr. 4, 2012); Maverick Entertainment Group, Inc. v. Does 1-2,115, 810 F. Supp. 2d 1, 18 (D.D.C. 2011); Sony Music Entertainment Inc., 326 F. Supp. 2d at 567.  At this stage of the litigation, without the identity of the defendants, we cannot evaluate the contacts between the various defendants and the forum state.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).  However, Plaintiff has submitted within the complaint a report from the forensic investigator that purports to show that all of the Defendants' IP addresses are located within our jurisdictional boundaries.  (See Compl. Ex. A.)  Even though their accuracy cannot be termed absolutely certain, courts have accepted IP addresses as establishing a *prima facie* case of personal jurisdiction.  See John Wiley & Sons Inc. v. Does Nos. 1-27, No. 11-7627, 2012 WL 364048, at *1 (S.D.N.Y. Feb. 3, 2012); DigiProtect USA Corp. v. Doe, No. 10-8760, 2011 WL 4444666, at *3-4 (S.D.N.Y. Sept. 26, 2011); Nu Image,

Inc. v. Does 1-23,322, 799 F. Supp. 2d 34, 40-41 (D.D.C. 2011).  Thus, at this early point in the

litigation, we find that Defendant's objection to personal jurisdiction is premature.

      In light of these findings, the Defendant's Motion to Quash is denied.

**IV.**    **CONCLUSION**

      For the aforementioned reasons, we deny Defendant's Motion for Severance and Motion

to Quash the Subpoena.

      An appropriate Order follows.